UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARCALE ANTHONY LEE,                   :
                                       :
         Petitioner                    :
                                       :
    v.                                 :  CIVIL NO. 3:14-CV-00772
                                       :
NANCY GIROUX, ET AL.,                  :  (Judge Conaboy)
                                       :
         Respondents                   :

### MEMORANDUM

Petitioner, Marcale Anthony Lee on April 22, 2014, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lee attacks the judgment of conviction and sentence imposed on August 19, 2009, by the Court of Common Pleas of Dauphin County, Pennsylvania, after a jury returned guilty verdicts on May 14, 2009.  Lee was convicted of criminal attempt (homicide), criminal conspiracy (robbery) and firearms not to be carried without a license, and received an aggregate sentence of 12 to 27 years of imprisonment.

Lee alleges that both trial and post-conviction counsel were guilty of ineffective assistance of counsel.  With respect to trial counsel Lee claims that counsel failed to (1) pursue a direct appeal of his conviction, (2) call an alibi witness, (3) present evidence from an individual who allegedly witnessed the

attempted homicide and robbery, and (4) request an alibi jury
instruction. Lee claims that post-conviction counsel who raised
trial counsel's alleged infectiveness in a petition under the
Pennsylvania Post Conviction Collateral Relief Act (PCRA), 42
Pa.C.S.A. §§ 9541-9551, was also ineffective in failing to pursue
an alleged conflict of interest of trial counsel.  Lee claims that
after he was sentenced his trial counsel did not zealously and
effectively pursue a direct appeal or newly discovered evidence
because Lee failed to pay trial counsel additional attorney's
fees.  Lee claims that post-conviction counsel was aware of this
conflict and did not adequately address it when seeking collateral
relief under the PCRA.  The claim relating to the failure to call
the alleged eyewitness is raised in the context of both
ineffective assistance of trial counsel as well as newly
discovered evidence warranting a new trial.  Lee claims that
either counsel was aware of the eyewitness and was ineffective for
failing to call the witness or that the witness was discovered
after Lee was sentenced and the testimony that the alleged
eyewitness proffered warrants a new trial.

By Order dated May 21, 2014, in accordance with United States
v. Miller, 197 F.3d 644 (3d Cir. 1999) and Mason v. Meyers, 208
F.3d 414 (3d Cir. 2000), Lee was advised that he could (1) have
the petition ruled on as filed, that is, as a § 2254 petition for
writ of habeas corpus and heard as such, but lose his ability to
file a second or successive petition, absent certification by the

court of appeals, or (2) withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Doc. 5.  On June 2, 2014, Lee filed a notice of election form indicating that he wanted to proceed on the petition as filed. Doc. 6. By Order dated June 10, 2014, the Court directed respondents to file an answer to Lee's petition and a brief in support of their answer. Doc. 7.  An answer, brief and appendix of exhibits were filed by the Dauphin County District Attorney on July 1, 2014.  Doc. 11. The Dauphin County District Attorney contended that Lee's petition was untimely filed with this court. After reviewing the record this court determined that Lee timely filed the petition and the court directed the Dauphin County District Attorney to respond to the merits of the petition. Doc. 15, Memorandum and Order dated January 12, 2014.  On February 27, 2015, the Dauphin County District Attorney filed a supplemental response to Lee's petition which included a brief, the state trial court record and multiple exhibits. Doc. 19, Response to Petition for Habeas Corpus.  Lee's petition became ripe for disposition on March 16, 2015, when he elected not to file a traverse.

For the reasons that follow, the Court will deny Lee's petition.

**Background**

After Lee was sentenced to an aggregate term of 12 to 27 years, Lee's attorney filed a motion to modify sentence which was

3

denied by the trial court on August 26, 2009, and then Lee on September 25, 2009, filed a direct appeal to the Superior Court raising a claim that the evidence was insufficient to find him guilty beyond a reasonable doubt.  The Superior Court of Pennsylvania on January 6, 2011, affirmed Lee's judgment of conviction and sentence. Doc. 19-5, Decision of the Superior Court. Lee did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.  Subsequently, Lee filed a PCRA petition with the trial court in which he claimed he was entitled to a new trial because (1) trial counsel was guilty of ineffective assistance of counsel when he failed to present an alibi witness and failed to request an alibi jury instruction, and (2) newly discovered evidence, i.e., an eyewitness to the crime reported that Lee was not present at the time the crimes were committed. The trial court on March 8, 2013, denied Lee's PCRA petition.  On September 26, 2013, the Superior Court affirmed the trial court's decision denying Lee relief under the PCRA. Lee did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

The court has reviewed the transcript of Lee's jury trial held in state court from May 11 through May 14, 2009, before the Honorable Jeannine Turgeon as well as the transcripts of the hearings held before Judge Turgeon on June 5 and August 23, 2012, with respect to Lee's PCRA petition.

There were two individuals involved in the robbery and
attempted homicide who were tried jointly: Lee and Pedro Morrell.
The trial resulted in the conviction of Lee and a hung jury with
respect to Morrell.[1] Some of the essential background of this case
(which is substantiated by this court's review of the state court
record) is succinctly set forth in the opinion of Judge Turgeon
addressing Lee's PCRA petition as follows:

> The charges arose out of the robbery and shooting of Jason
> Barton on November 25, 2007, by [Lee] and his conspirator
> Pedro Morrell during an aborted drug deal. . . .
>
> Jason Barton testified that on the evening of Sunday[,]
> November 25, 2007, [Lee] telephoned Barton to arrange to
> buy three-quarters of an ounce of crack cocaine.[] Barton
> was a drug dealer and [Lee], known to Barton as
> "Killa/Killer" or "Black Nigga," was his client. [] At the
> time of the shooting, Barton had known petitioner for two to
> three months and had contacted him by phone and made personal
> contact with him at least twenty times.[] Phone records
> corroborated that seven calls were placed between Barton's
> cell phone and one of the three cell phone numbers used by
> petitioner on November 25, 2007 (number ending 2462), the
> last two calls occurring at 9:18 p.m and 9:26 p.m. EST,
> respectively. []
>
> Barton drove to meet [Lee] in a parking lot of the Hall
> Manor housing project, receiving directions over the phone
> from [Lee]. [] [Lee] approached on foot and entered the
> passenger side of [] Barton's vehicle. [] As Barton drove out
> of the parking lot, another vehicle, allegedly driven by
> Morrell, began to follow them. [] Barton asked [Lee] about
> the other vehicle and [Lee] told him, "that's my man,"
> indicating he would provide money for the drug buy. []
>
> After making several turns, [Lee] directed Barton
> to stop the vehicle. Barton complied, pulling back into the
> parking lot where they initially met. [] [Lee] then pulled
> the keys from the ignition and stuck a gun into Barton's

---

1.  Morrell was subsequently retried in September, 2009, and
found guilty of attempted homicide, robbery, conspiracy and
firearms not to be carried without a license.

side. [] Meanwhile, Morrell approached Barton's car on foot
and tapped the driver's side window with a gun. [] Morrell
tried unsuccessfully to open Barton's locked door so he
walked around to the front of the vehicle at which point
Barton fled on foot into a nearby field while [Lee] and/or
Morrell fired shots at him. [] Barton was struck numerous
times and fell. [] As he was lying on the ground, the two
perpetrators stood over him with guns pointed and stole his
ring, bracelet, watch and money. [] [Lee] instructed Morrell
to shoot the "rat" but Morrell's gun jammed so petitioner
fired his own gun, striking Barton in the face. [] Barton was
somehow able to get up and run toward a nearby neighborhood.
[] [Lee] caught up with him and struck him repeatedly on the
head with his gun. [] As people gathered, [Lee] fled. []
Barton suffered four bullet wounds, was hospitalized and
underwent multiple surgeries including insertion of a metal
plate in his face. []

     Police were alerted to the shooting by dispatch, around
10:00 p.m. [] Harrisburg Police Detective Richard Iachini
testified that Barton was able to communicate that night but
did not answer police when asked who had shot him. []
Detective Iachini next spoke with Barton at his girlfriend's
home on December 3, 2007, at which time he admitted he had
planned a drug deal that night with "Killer" but was robbed
instead. [] On December 6, 2007, Detective Iachini met with
Barton and his attorney at the police station.  After Barton
was assured he would not be charged with any drug crimes, he
told police he was trying to deliver 3/4 of an ounce of crack
cocaine to [Lee]. [] Detective Iachini then looked through
Barton's cell phone, which had been collected at the crime
scene, and identified three phone numbers Barton used to
contact [Lee], one of which he later discovered was
registered under the name Marcale Lee (number ending 2462).[]
Having found [Lee's] name, Detective Iachini prepared a
photo array and Barton positively identified [Lee} as the
shooter on January 3, 2008. []

     Barton similarly testified that during the December 3,
2007 meeting with Detective Iachini, he identified "Killa" as
the person who shot him.  He told police at the time he did
not know [Lee's] real name. [] Barton was able to identify
petitioner from the photo array and later identified [Lee]
in court. [] Barton admitted at trial, however, that he told
an officer on the night of the shooting that he didn't
know who shot him. [] He clarified that he meant to say that
he couldn't provide a name to police, not that he didn't know
who shot him. [] He further explained that he tried to
minimize his involvement because he was on state parole
and possessed drugs the night he was shot. []

[Lee] presented one witness at trial, his mother
Marchelle Bullock, offered as an alibi witness.  Bullock
testified that shortly after 7:00 p.m. on the night of
the shooting, she called her cousin Tiffany who lived in Hall
Manor to see if [Lee] was in the area. [] Tiffany told her
he was and Bullock told Tiffany to let [Lee] know she was on
her way to pick him up. [] According to Bullock, [Lee] hung
out at Hall Manor frequently and either Bullock or her
boyfriend Rodney Howerton would pick him up there in the
evenings. [] She testified that around 7:30 p.m. on the night
of the shooting, which was the Sunday following Thanksgiving,
she drove to pick up her younger son Marquise Easter and then
[Lee], who was at the Hall Manor parking lot. [] They all
returned to their residence about twenty minutes later along
with Howerton. [] Bullock testified they were all together in
the house until Howerton left around 9:30 p.m. at which point
[Lee] was in his own bedroom. [] She did not indicate in
her testimony whether she saw [Lee] the remainder of the
evening.

Bullock denied that [Lee} had use of a cell phone at the
time of the shooting (with the number ending 2462) or that he
made any calls the night of the shooting, claiming he had
lost his cell phone. [] On rebuttal, Detective Iachini
testified that in early January 2008, he was part of an
investigation into the unrelated homicide of [Lee's] cousin.
During that investigation, police spoke with [Lee] and [Lee]
provided police with his cell phone number, ending in 2462,
as a contact number. []

Doc. 19-9, Judge Turgeon's Opinion dated March 8, 2013.  A review

of the trial transcript further reveals that Paul J. Kovatch,

Esquire, counsel for Lee, as well as Eric A. Delp, Esquire,

counsel for Morrell, extensively cross-examined Barton regarding

his criminal record and promises by the state prosecutor not to

charge him with drug offenses.[2]  The trial transcript further

reveals that Barton was indicted by a federal grand jury in or

---

2.  The assistant district attorney handling the case also
elicited evidence regarding Barton's prior criminal record,
including that he was prosecuted for federal drug charges.

about April, 2008, for drug offenses and was sentenced to a term of imprisonment of 13 years.  At Lee and Morrell's joint trial in state court in May of 2009 defense counsel presented evidence and argued to the jury that Barton could receive a decrease in his federal sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure as the result of his cooperation with state law enforcement and his testifying against Lee and Morrell.[3]

Four witnesses testified during the PCRA proceedings.  At the first PCRA hearing before Judge Turgeon on June 5, 2012, Lee's mother's former boyfriend Rodney Howerton[4] and attorney Kovatch testified. Doc. 19-7. Transcript of Proceedings.  At the second PCRA hearing held on August 23, 2012, Amber Waid, the purported eyewitness to the shooting testified, as well as attorney Delp. Doc. 19-8, Transcript of Proceedings.  The court will commence

---

3.  Trial counsel also challenged Barton's credibility at the time of trial by presenting evidence that Lee was released from state custody on October 4, 2007, and that Barton stated that he knew and had contact with and delivered drugs to Lee 20 times over a three month period.  Lee contended that he could not have had such contact because he was in prison up to October 4, 2007. The record reveals, however, that Barton did not state that he had contact with Lee for 3 months. Instead he stated he had known Lee for two or three months. Doc. 19-14, at 11, State Court Trial Transcript, May 12, 2009.  Since Lee was released from prison on October 4, 2007, it is entirely possible Barton had contact with Lee for about a two month period either in person or by telephone. Moreover even though Lee was incarcerated prior to October 4, 2007, Barton could have known of him for two or three months.

4.  Howerton testified he was in relationship with Marchelle Bullock, Lee's mother from 2003 through 2009.

with a summary of the testimony of Howerton during the PCRA proceedings.

Howerton testified that in November of 2007 he was living with Marchelle Bullock and her two sons, Marquise Easter and Lee, at Bullock's residence located at 1139 Summerwood Drive, Harrisburg, and that at the time he was like a stepfather to Lee. Doc. 19-7, at 3-6,[5] Transcript of Proceedings.  Howerton further testified that if he had been called to testify at Lee's trial, he would have stated that on the day of the shooting he arrived at 1139 Summerwood Drive at about 5:15 after leaving work and that he went to sleep until about 7:00 p.m.  Id.  Sometime between 7:00 and 8:00 p.m. Howerton accompanied by Bullock went to pick up Lee on the "south side" and Marquise at a 7-Eleven store and after picking them up returned to 1139 Summerwood Drive. Id.  Howerton admitted that after he got home that night he was by himself in an upstair bedroom watching TV. Id.  He further indicated that he usually went with his brother to shoot pool every night around 9:00 p.m. and that he remembered his brother calling him and that it was possible that on that night he might have left the residence by 9:00 p.m. to do so. Id.

Waid testified that sometime in the spring of 2009 she learned that Lee was tried and found guilty by a jury.  She then

_____

5.  The court utilizes the page numbers placed on the document by the electronic case management system. The page numbers are found at the top of the pages after the case docket number, document number and date filed.

approached Lee's brother Marquise and told him that his brother was not involved in the shooting. Doc. 19-8, at 4-10, Transcript of Proceedings.  Waid was then contacted through written correspondence by attorney Delp and issued a subpoena to appear at Morrell's retrial in September, 2009. Id.  Waid testified at the PCRA hearing that shortly before 10:00 a.m. on the night of the shooting, she was walking near a store close to Hall Manor, where she lived, when she saw two darker skinned males arguing with a lighter skinned male. Id.  She heard shots fired and hid behind a trash can after which the lighter skin male ran past her followed by the other two males. Id.  The two darker skinned males, shortly thereafter, came back the same way walking quickly past her.  Id.

Waid denied seeing Lee or Morrell that night. Id.  Waid further testified that she never had a conversation with attorney Kovatch prior to or during the first trial and that attorney Kovatch never contacted her.  Id.

Attorney Kovatch testified that prior to Lee's May, 2009, trial he filed with the Court of Common Pleas a notice of alibi defense which listed three potential witnesses: Bullock, Marquise Easter and Howerton. Doc. 19-7, at 7-8 & 11, Transcript of Proceedings.  Attorney Kovatch met with Howerton at least once prior to trial and spoke with him on the phone. Id.  Attorney Kovatch also spoke to Howerton during the course of the trial. Id.  Attorney Kovatch indicated that he made the decision not to call Howerton as a witness primarily because Howerton was unable to pin

down the specific times and even the date he recalled Lee was in the house with him. Id.  In addition, attorney Kovatch was already going to use the mother of Lee as a alibi witness and he was concerned how the jury would perceive an alibi offered by someone who considered himself the stepfather of Lee and who could not pin down the exact times he was aware of Lee's presence in the residence. Id.  As for Marquise Easter, attorney Kovatch stated that Easter "was similar to [Howerton] where he just couldn't provide specific times[.]" Id. at 11.

With regard to Waid, attorney Kovatch testified that he became aware of her as a potential witness shortly before Lee's trial. Id. at 8-9.  Attorney Kovatch contacted her by phone and Waid told Kovatch that she knew both Lee and Morrell and specifically stated she did not want anything to do with the trial and she was "not going to come in and testify to what [Lee] want[ed] her to say." Id. at 9. Based on this conversation with Waid, attorney Kovatch concluded that Waid was not going to be helpful and would not provide any exculpatory information at trial and thus declined to subpoena her because he could not trust what she would say on the stand, including potentially identifying Lee as having been at the crime scene. Id.

Waid testified at the second trial involving Morrell who was represented by attorney Delp. Attorney Delp was the last witness who testified during Lee's PCRA proceedings.  Attorney Delp stated that he first became aware of Waid from attorney Kovatch "between

11

the first and second trial" of Morrell. Doc. 19-8, at 8,
Transcript of Proceedings.  Attorney Delp obtained an address for
Waid from attorney Kovatch and sent Waid a subpoena to appear at
the second trial. Id.  The first time attorney Delp spoke to Waid
was when she appeared at the courthouse in response to the
subpoena. Id.  After speaking to her apparently riding up in the
courthouse elevator, attorney Delp called Waid as a witness to
testify on behalf of Morrell. Id.  As noted above, Morrell was
convicted of all of the charges at the second trial.

## Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the
proper mechanism for a prisoner to challenge the "fact or
duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475,
498-499 (1973).  "[I]t is not the province of a federal habeas
court to reexamine state-court determinations on state-law
questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).
Rather, federal habeas review is restricted to claims based "on
the ground that [petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States."  28 U.S.C.
§ 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v.
Harris, 465 U.S. 37, 41 (1984); Johnson vs. Rosemeyer, 117 F.3d
104 (3d Cir. 1997).

## A.  Exhaustion

Habeas corpus relief cannot be granted unless all available
state remedies have been exhausted, or there is an absence of

12

available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  Castille v. Peoples, 489 U.S. 346, 351 (1989).  Fair presentation requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.  In Pennsylvania, the requirement of "fair presentation" means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Court of Common Pleas and then to the Superior Court either on direct or PCRA appeal.  See, e.g., Lambert v. Blackwell, 387 F.3d 210, 231-234 (3d Cir.2004).[6]

---

6.  In 2000 the Pennsylvania Supreme Court issued an

(continued...)

B. **Procedural Default**

If a petitioner presents unexhausted habeas claims to a
federal court, but state procedural rules bar further state court
review, the federal court will excuse the failure to exhaust and
treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223
(3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98 (1989).
Although deemed exhausted, such claims are considered procedurally
defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines v.
Larkin, 208 F.3d 153, 160 (3d Cir. 2000), cert. denied, 531 U.S.
1082 (2001).

A federal habeas court cannot review the merits of
procedurally defaulted claims unless the petitioner demonstrates
either cause for the procedural default and actual prejudice, or
that a fundamental miscarriage of justice will result if the court
does not review the claims. See McCandless v. Vaughn, 172 F.3d
255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v.
Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause
for a procedural default, the petitioner must show that some
objective external factor impeded petitioner's efforts to comply
with the state's procedural rule. See Murray v. Carrier, 477 U.S.

---

6. (...continued)
administrative order ("Order 218") which relieves a state
prisoner of filing with the Supreme Court a direct appeal of a
criminal case or in a PCRA proceeding in order to exhaust state
court remedies for purposes of federal habeas review. In Lambert,
the Court of Appeals for this circuit held that Order 218 was
sufficient to render discretionary review before the Pennsylvania
Supreme Court "unavailable."

478, 488 (1986). In <u>Coleman</u>, the Supreme Court held that ineffective assistance of counsel on collateral review does not constitute cause to excuse a procedural default. <u>Coleman</u>, 501 U.S. at 753-754. However, the Supreme Court in <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012) recognized an exception to its holding in <u>Coleman</u>. <u>Martinez</u>, 132 S.Ct. at 1315. Specifically, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[7] <u>Id.</u> To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Wenger</u>, 266 at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has

---

7.  The Supreme Court only excused a procedural default of a claim that *trial counsel* was guilty of ineffective assistance. <u>Martinez</u> did not hold that ineffective assistance of PCRA counsel was an independent basis for the issuance of a writ of habeas corpus. Under <u>Coleman</u> there is no constitutional right to an attorney in state post-conviction proceedings; consequently, a habeas petitioner cannot claim constitutionally ineffective assistance of counsel with respect to such collateral proceedings. 501 U.S. at 752-753.

probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

**C.  Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are

correct.  A petitioner may only rebut this presumption with clear
and convincing evidence of the state court's error.  Miller-El v.
Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and
convincing standard in § 2254(e)(1) applies to factual issues,
whereas the unreasonable application standard of § 2254(d)(2)
applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v.
Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of
correctness applies to both explicit and implicit findings of
fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).
Consequently, a habeas petitioner "must clear a high hurdle before
a federal court will set aside any of the state court's factual
findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir.
2001).

     Like the "unreasonable application" prong of paragraph (1), a
factual determination should be adjudged "unreasonable" under
paragraph (2) only if the court finds that a rational jurist could
not reach the same finding on the basis of the evidence in the
record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d
278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d
1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S.
307, 316 (1979).  "This provision essentially requires the
district court to step into the shoes of an appellate tribunal,
examining the record below to ascertain whether sufficient
evidence existed to support the findings of fact material to the
conviction."  Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D.

17

Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[8]).  Mere
disagreement with an inferential leap or credibility judgment of
the state court is insufficient to permit relief.  <u>Porter</u>, 276 F.
Supp 2d at 296; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 408-09
(2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001).  Only
when the finding lacks evidentiary support in the state court
record or is plainly controverted by evidence therein should the
federal habeas court overturn a state court's factual
determination.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>,
529 U.S. at 408-09.

**<u>Discussion</u>**

Other than the claim of newly discovered evidence all of
Lee's claims set forth in the present habeas petition are raised
in the context of ineffective assistance of counsel.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 688,(1984), the
United States Supreme Court held that to prove a constitutional
violation for ineffective assistance of counsel, a habeas
petitioner must meet a two-pronged test. The petitioner must show
"that counsel's performance was deficient" and that "the deficient

---

8.  "If the applicant challenges the sufficiency of the
evidence adduced in such State court proceeding to support
the State court's determination of a factual issue made
therein, the applicant, if able, shall produce that part of
the record pertinent to a determination of the sufficiency
of the evidence to support such determination."  28 U.S.C. §
2254(f).

performance prejudiced the defense." Id. at 687; accord Deputy v.
Taylor, 19 F.3d 1485, 1493 (3d Cir.1994).

To demonstrate deficient performance, a petitioner must show
that "counsel's performance fell below an objective standard of
reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v.
Horn, 266 F.3d 257, 282 (3d Cir.2001). A reviewing court must
"indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance." Strickland,
466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v.
Morton, 100 F.3d 1089, 1094 (3d Cir.1996). If, under the
circumstances, counsel's actions might be considered sound trial
strategy, the presumption is not rebutted, Strickland, 466 U.S. at
689, because "substantial deference is to be accorded counsel's
tactical decisions." United States v. Wiener, 127 F.Supp.2d 645,
648 (M.D.Pa.2001). A decision supported by "reasonable
professional judgment does not constitute ineffective assistance
of counsel. See Burger v. Kemp, 483 U.S. 776, 794, (1987). It
follows that counsel cannot be deemed ineffective for pursuing a
meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d
Cir.1999).

A petitioner satisfies the second prong and shows prejudice
when "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome." Strickland,

466 U.S. at 694; accord <u>Frey v. Fulcomer</u>, 974 F.2d 348, 358 (3d Cir.1992) "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation omitted). In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." <u>Strickland</u>, 466 U.S. at 695; <u>Jermyn</u>, 266 F.3d at 283.  However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d. Cir. 2006).  "The object of an ineffective assistance claim is not to grade counsel's performance.  If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id</u>.

At the time the state court reviewed the ineffective assistance of counsel claims raised by Lee, <u>Strickland's</u> familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance,

20

identical to the Strickland test.  See, e.g., Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa.1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland.  Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir.2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir.2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania's Supreme Court's decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

## A. Ineffective Assistance of Counsel for Allegedly Not Pursuing a Direct Appeal.

Lee contends that trial counsel was ineffective for failing to file a direct appeal.  This claim is being raised for the first time in Lee's federal habeas petition.  Consequently, the question becomes whether it was procedurally defaulted and, if so, whether there is cause and prejudice to excuse the default. The first issue the court has to address is whether or not there is cause for Lee's failure to raise the issue in state court.  Lee contends that the ineffective assistance of the attorney who represented him during the state post-conviction proceedings establishes the cause for his failure to raise the issue.  In light of Martinez, supra, such ineffective assistance could establish the cause prong

21

under the test to excuse a procedural default.[9]  However, this
claim is meritless as Lee's trial counsel did file a direct appeal
on Lee's behalf. Lee's trial counsel presented Lee's argument to
the Superior Court that the evidence was insufficient to support
his conviction. Doc. 19-5, Decision of the Superior Court, dated
January 6, 2011. While Lee's trial counsel, attorney Kovatch, did
not find merit in the claim that there was insufficient evidence
to find Lee guilty beyond a reasonable doubt, he pursued the
appeal in accordance with Anders v. California, 386 U.S. 738
(1967) and its Pennsylvania equivalent, Commonwealth v. McClendon,
495 Pa. 467 (1981). Furthermore, the Superior Court performed an
independent review of the record and found that there was clearly
sufficient evidence to find Lee guilty beyond a reasonable doubt.
Based on this court's review of the record and evidence submitted
at the May, 2009, trial this court cannot disagree with the
Superior Court's decision.  The Superior Court reviewed the
evidence, including Barton's testimony that Lee was the one who
robbed and shot him in the face. In addition, there was evidence
obtained from Barton's cell-phone which revealed a call from Lee's
cell-phone prior to the meeting.  Because the claim of

---

9.  In essence we have two ineffective assistance of counsel
claims raised: (1) a claim against Lee's post-conviction attorney
who filed the PCRA petition and (2) a claim against his trial
counsel.   In order for Lee to establish ineffective assistance
of either trial or PCRA counsel Lee is required to meet the
requirements of Strickland: show "that counsel's performance was
deficient" and that "the deficient performance prejudiced the
defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493
(3d Cir.1994).

insufficient evidence has no merit, trial counsel cannot be guilty
of ineffective assistance for purportedly not zealously pursuing
the claim.

### B. Ineffective Assistance of Counsel for Allegedly Not Presenting Testimony at Trial From an Individual Who Claimed to Be an Eyewitness to the Crime.[10]

Under Pennsylvania law in order for a defendant to establish
that he or she is entitled to relief based on a claim of
ineffective assistance of counsel for failing to present a
witness, the defendant must prove: (1) the witness existed; (2)
counsel was either aware of or should have been aware of the
witness's availability; (3) the witness was willing and able to
cooperate on behalf of the defendant; and (4) the proposed
testimony was necessary to avoid prejudice to the defendant. See

_____

10.  Lee appears to make several interrelated claims regarding
the potential testimony of Amber Waid.  He appears to claim that
(1) trial counsel was ineffective for failing to file a post-
sentence motion based upon discovery of new evidence, i.e., Amber
Waid's purported eyewitness testimony; and (2) somewhat
inconsistently claims the testimony was newly discovered after
trial and her testimony is sufficient to warrant a new trial.
Either trial counsel was aware of her being a potential witness
and was ineffective for failing to call her as a witness, or he
was not aware of her potential testimony and her testimony was
newly discovered and the question becomes whether her testimony
was of such magnitude, in light of the other evidence presented
at trial, to find that it could have changed the outcome of the
trial and thus warranting the issuance of an order granting Lee a
new trial. Because the issue was addressed in the context of
newly discovered evidence at the PCRA hearing by Judge Turgeon,
the claim that trial counsel was ineffective for raising it in a
post-sentence motion is moot.

Commonwealth v. Holland, 556 Pa. 175, 727 A.2d 563, 566-567 (1999).

An evaluation of the failure on the part of defense counsel to call witnesses falls squarely within the first prong of Strickland, which pertains to whether the attorney made his tactical decisions "in the exercise of reasonably professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. 2052; see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.2001) (citing Strickland, and concluding that the failure to use certain testimony "amounted to a tactical decision within the parameters of reasonable professional judgment").

As stated previously, the second prong of Strickland, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [where a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. In other words, a petitioner must show a "reasonable likelihood that ... information [not presented] would have dictated a different trial strategy or led to a different result at trial," Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir.1990), or a "reasonable probability that he would have been acquitted had [the uncalled witness] testified either alone or in conjunction with [other evidence.]" Id.

24

To the extent that Lee argues that trial counsel was ineffective for failing to present the testimony of Amber Waid at the time of trial, Judge Turgeon found that attorney Kovatch's testimony was credible and we see no basis to second guess that credibility determination. Attorney Kovatch testified that he was aware of Waid as a potential witness, contacted her and that she refused to be involved in the trial.  Attorney Kovatch further indicated that Waid stated that she would not appear at trial and testify to what Lee wanted her to say.  In light of attorney Kovatch's testimony which was found credible by Judge Turgeon, we cannot conclude that attorney Kovatch was guilty of ineffective assistance of counsel for declining to serve her with a subpoena to testify at trial.  Attorney Kovatch reasonably concluded in light of Waid's statement that her testimony might be detrimental to Lee's interests.  Lee has failed to show that the decision of PCRA court that attorney Kovatch was not ineffective for failing to call Waid as witness was contrary to, or involved and unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the PCRA court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, this court finds Lee's claim that trial counsel was guilty of ineffective

assistance for failing to call Waid as a witness to be without merit.

## C. Ineffective Assistance of Counsel for Allegedly Failing to Call Rodney Howerton as an Alibi Witness.

Lee next claim that attorney Kovatch was guilty of ineffective assistance of counsel for failing to call Howerton as an alibi witness. Judge Turgeon made factual findings based on attorney Kovatch's testimony that Howerton was unable pin down the date or time he was with Lee in November, 2007, and that he could not definitively indicate that he did not leave the residence at or about 9:00 p.m. the evening of the shooting thus giving Lee and opportunity to leave the residence and meet Barton. Judge Turgeon in addressing this claim of ineffective assistance of counsel specifically indicated as follows:

> In order to obtain relief on a claim that counsel was ineffective for failing to call a witness, [Lee] must establish that the witness existed and was available, counsel knew or should have know of the witness' identity, the witness would have testified on [Lee's] behalf and [Lee] was prejudiced by the absence of the testimony that would have been offered. Commonwealth v. Speight, 677 A.2d 317, 323 (Pa. 1996). The failure to call a potential witness is not per se ineffective absent some positive demonstration that the testimony would have been helpful to the defense. Commonwealth v. Carbone, 707 A.2d 1145, 1153 (Pa. Super. 1998)(citation omitted).
>
> *   *   *   *   *   *   *   *   *   *   *   *
>
> I find Attorney Kovatch'[s] testimony credible that he fully considered using Howerton as an alibi witness but decided against it based upon sound reasoning, including that Howerton was unable to specifically identify the time and date he was in the residence with [Lee]. In addition, Howerton's own testimony revealed he may have

26

> possibly been out of the residence by 9:00 p.m.
> [footnote omitted] . . . [T]he shooting and robbery
> of Jason Barton did not occur until closer to 10:00
> p.m.  Accordingly, given that Kovatch's decision not
> to call Howerton as an alibi witness was a reasonable
> trial strategy designed to effectuate [Lee's] interests,
> trial counsel cannot be considered ineffective.

Doc. 19-9, at 5-6, Judge Turgeon's Opinion dated March 8, 2013.

Judge Turgeon in a footnote further indicated that Lee's mother

had testified that Howerton had left the residence by 9:30. Under,

the circumstances, Lee has failed to show that the decision of

PCRA court that attorney Kovatch was not ineffective for failing

to call Howerton as a witness was contrary to, or involved and

unreasonable application of clearly established Federal law, as

determined by the Supreme Court of the United States, or that the

PCRA court's ruling resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  Accordingly, this court

finds Lee's claim that trial counsel was guilty of ineffective

assistance of counsel for failing to call Howerton as a witness to

be without merit.

### D. **Ineffective Assistance of Counsel for Allegedly Failing to Request an Alibi Jury Instruction.**

Lee argues that the state court erred in not finding that

attorney Kovatch was ineffective for failing to request an alibi

jury instruction.  The Court of Appeals for this circuit has

stated as follows:

> "Habeas relief for a due process violation concerning an
> absent or defective jury instruction is available only when

the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." Albrecht v. Horn, 485 F.3d 103, 129 (3d Cir.2007) (citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); see also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (an improper state court instruction warrants the granting of habeas relief only upon a showing that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely [that] the instruction is undesirable, erroneous, or even universally condemned") (internal citations and quotation marks omitted). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

Real v. Shannon, 600 F.3d 302, 309 (3d cir. 2010).  The record is clear that an alibi jury instruction was not given and Judge Turgeon indicated that if one had been requested she would have given it.  Judge Turgeon further concluded that there was no reasonable basis for attorney Kovatch not to have asked for such an instruction and noted that the standard Pennsylvania alibi jury instruction was as follows:

> In this case, the defendant has presented evidence of an alibi, that is, that [he][she] was not present at the scene or was rather at another location at the precise time that the crime took place.  You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond reasonable doubt that a crime was committed and that the defendant [himself][herself] committed [or took part in committing] it. The defendant's evidence, may be sufficient to raise a reasonable doubt of [his][her] guilt. If you have a reasonable doubt of the defendant's guilt, you must find [him][her] not guilty.

Pa. SSJI (Crim), §3.11 (2005).  However, Judge Turgeon found in light of the totality of the evidence and the jury instructions that were given, including instructions on identification of the

28

perpetrators of the crimes and the credibility of witnesses,[11]
that Lee was not prejudiced by the absence of the alibi jury
instruction.  Judge Tugeon specifically found that the jury was
"clearly aware [based on the other jury instructions given] that
whether [Lee] and Morrell were at the crime scene that night was
the critical issue in the case" and that the "substantive content
of . . . the alibi instruction was conveyed to the jury."  Doc.
19-9, at 10, Judge Turgeon's Opinion dated March 8, 2013.
Consequently, Lee failed to meet the prejudice prong of the
Strickland test for ineffective assistance of counsel.  In
addressing the issue of prejudice Judge Turgeon specifically
stated as follows:

---

11.  At one point Judge Turgeon instructed the jury as follows:

> [A]s you know, the issue in this case really is whether
> or not these defendants are the people who committed
> the crimes that we heard described about. The
> identification testimony is probably the critical issue
> that you are going to have to resolve.
>
> *    *    *    *    *    *    *    *    *    *    *
>
> In this trial, the victim identified the defendants
> present in the courtroom as the people who committed
> the crimes . . . As you know, the defendants have
> raised a question as to whether or not this
> identification of them is accurate.

Doc. 19-12, at 28 and 30-31, Trial Transcript, May 13, 2009. At
another point Judge Turgeon instructed the jury to "consider all
the evidence presented in evaluating the question of who
committed the crime including the testimony of the victim and all
the other facts and circumstances" and that they could not
"convict either of the defendants unless [they were] convince[d]
beyond a reasonable doubt by all the evidence, direct and
circumstantial, of their guilt." Id. at 32.

In this case, [Lee] fails to prove actual prejudice; i.e., a reasonable probability that but for counsel's unprofessional error, the verdict would have been not guilty. [citation omitted.] "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." [citations omitted.]

The alibi testimony offered by [Lee's] mother, Marchelle Bullock, was weak substantively and credibility-wise. Substantively, her testimony provided at most only a partial alibi for [Lee] insofar as her testimony indicated that on the night of the shooting the last time she saw [Lee] in her residence was around 9:30 p.m. The evidence presented at trial, however, revealed the robbery and shooting occurred shortly before 10:00 p.m.  Her testimony also lacked credibility wherein she had testified that on the night of the shooting [Lee] made no phone calls, which was contradicted by phone records showing numerous calls between [Lee's] phone and Barton's that day, including two that evening when [Lee] was allegedly with Bullock in their residence. She also testified [Lee] did not even possess a cell phone, ending in number 2462, since he had lost it. Detective Iachini testified, however, that [Lee] claimed that number as his own only six weeks later in early January 2008 during the unrelated police investigation. Finally, Bullock's alibi testimony was not that of a neutral party but of a family member, with obvious bias.

In addition to this relatively weak alibi testimony, the jury heard fairly strong eyewitness testimony by the victim Barton that [Lee], whom Barton had met numerous times, robbed and shot him that night in Hall Manor. As noted, even though [Lee] did not live in Hall Manor at the time, he regular hung out there.  Phone records showing frequent phone contact between Barton and the three phone numbers Barton used to contact [Lee], including seven calls on the day of the crimes, further corroborated Barton's testimony that he was [Lee's] drug dealer and that this was a drug deal gone bad. Given this evidence, it is not reasonably probable that had the jury been given the missing alibi instruction they would have found [Lee] not guilty.

Doc. 19-9, at 9-10, Judge Turgeon's Opinion dated March 8, 2013.

Lee has failed to show that the decision of PCRA court that

attorney Kovatch was not ineffective for failing to request an

alibi jury instruction was contrary to, or involved an

unreasonable application of clearly established Federal law, as
determined by the Supreme Court of the United States, or that the
PCRA court's ruling resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding.  Accordingly, this court
finds Lee's claim that trial counsel was guilty of ineffective
assistance for failing to request such a jury instruction is
without merit.

###### E.    Alleged After-Discovered Eyewitness Testimony Warranting a New Trial.

Preliminarily it should be stated that "[c]laims of actual
innocence based on newly discovered evidence have never been held
to state a ground for federal habeas relief absent an independent
constitutional violation occurring in the underlying state
criminal proceedings." Herrera v. Collins, 506 U.S. 390, 400
(1993).  In this case the remedy is provided merely under state
law: the Pennsylvania PCRA provides a basis for relief when there
is newly-discovered or after-discovered evidence.  Specifically,
under the PCRA an individual can obtain a new trial if he or she
pleads and proves by a preponderance of the evidence "[t]he
unavailability at the time of trial of exculpatory evidence that
has subsequently become available and would have changed the
outcome of the trial if it had been introduced." 42 Pa.C.S.A.
§9543(a)(2)(vi). Judge Turgeon noted that to obtain relief in
state court under this provision, a convicted individual must
demonstrate all of the following by a preponderance of evidence:

(1) the proposed evidence could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely to impeach the credibility of a witness; and (4) the evidence would likely result in a different verdict if a new trial were granted. Commonwealth v. Pagan, 950 A.2d 270, 292 (Pa. 2008); Commonwealth v. Padillas, 997 A.2d 356, 363 (Pa. Super. 2010). Judge Turgeon concluded based on the testimony of attorney Kovatch that Lee had failed to prove that Waid was a newly-discovered or after-discovered witness. Judge Turgeon found credible attorney Kovatch's testimony that he spoke with Waid on the telephone during which Waid revealed her hostility to being called as a potential witness for Lee. At the time of trial there was no exculpatory evidence available from Waid in light of her refusal to be involved and her statement that she would not "come in and testify to what [Lee] want[ed] [her] to say." Judge Turgeon further made the following findings:

> [Lee] . . . fails to prove the fourth prong . . . wherein Waid's testimony would not have likely resulted in a different verdict. Barton provided strong eyewitness testimony that [Lee] robbed him, shot him in the face and chased him down and struck him in the head during an aborted drug deal. Barton's testimony was corroborated by cell phone records showing numerous phone calls between him and petitioner including two within a half hour of the shooting in which they arranged a meeting to conduct a drug deal. In addition, despite Waid's eyewitness testimony at Morrell's re-trial that neither Morrell nor [Lee] were involved in the shooting, the jury nevertheless disregarded her testimony and convicted Morrell of attempted murder, robbery, conspiracy and a firearms violation, indicating that her

32

>           testimony would not likely result in a different verdict
>           if offered in a re-trial of [Lee].

Doc. 19-9, at 12-13, Judge Turgeon's Opinion dated March 8, 2013.

The state court record fully supports Judge Turgeon's findings,
and this court has no basis, or even authority, to question those
findings.

Finally, Lee argues that Gail F. Souders, Esquire, the
attorney who represented him during the PCRA proceedings was
ineffective for failing to claim that attorney Kovatch had a
conflict of interest, i.e., after the May, 2009, jury trial
attorney Kovatch allegedly had a dispute with Lee regarding
attorney's fees.  First, it is not at all clear how this alleged
conflict impacted attorney Kovatch's performance up to the time of
the jury verdict and the imposition of sentence.  Second, this is
a claim of ineffective assistance of PCRA counsel which is barred
by Coleman.  As stated in footnote 7, the Supreme Court in
Martinez only excused a procedural default of a claim that *trial
counsel* was guilty of ineffective assistance. Martinez did not
hold that ineffective assistance of PCRA counsel was an
independent basis for the issuance of a writ of habeas corpus.

An appropriate order will be entered.


                         S/Richard P. Conaboy
                         RICHARD P. CONABOY
                         United States District Judge


Date: August 12, 2015

33